UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NATHAN W. CLOUSER, | : | CIVIL NO: 1:12-CV-01870 |
| Plaintiff | : | (Judge Conner) |
| v. | : | (Magistrate Judge Schwab) |
| TODD JOHNSON, *et al.*, | : | |
| Defendants | : | |

# REPORT AND RECOMMENDATION

## I. Introduction.

The plaintiff claims that the defendants violated his constitutional rights in connection with a search of his residence, his arrest, and his prosecution. The defendants moved to dismiss many of the plaintiff's claims. For the reasons set forth below, we recommend that several of the plaintiff's claims be dismissed. We also recommend that several of the plaintiff's claims not be dismissed and that the case be remanded to the undersigned for further proceedings as to those claims.

## II. Background and Procedural History.

The plaintiff, Nathan W. Clouser, proceeding *pro se*, began this action by filing a complaint naming as defendants the following officers: Todd Johnson, a detective in charge of the Dauphin County Drug Task Force (task force); Regis

Vogle, III, an officer with the task force; and John Goshert, a supervisor of the Dauphin County Criminal Investigative Division (CID).

Clouser alleges that, on March 15, 2011, the defendants, other members of the task force, Pennsylvania State Police troopers, and DEA agents executed a warrant at his residence in Millersburg, Pennsylvania. When the police entered his residence, Clouser was placed in restraints, moved to the rear of the residence, and given *Miranda* warnings. According to Clouser, he immediately requested an attorney. During the search, Clouser was moved to the front of the residence, where defendant Vogel allegedly questioned him for approximately an hour. Clouser alleges that he was then again given *Miranda* warnings, and he again immediately requested an attorney.

After the search, Clouser was arrested for attempt to manufacture Fentanyl and unlawful use of a communication device. Defendants Johnson and Goshert then transported him to central booking in Harrisburg, and from there Clouser alleges that he was remanded to the Dauphin County Prison in lieu of $250,000 bail. According to Clouser, on March 17, 2011, he met with a representative of the Dauphin County Public Defender's Office, and a case file was opened.

Clouser alleges that, on March 29, 2011, members of the Sheriff's Office transported him to a holding cell in the Dauphin County Courthouse, and defendant

2

Johnson then transported him to CID offices. According to Clouser, after he informed Johnson that he had met with the Public Defender's Office, he asked whether his attorney would be present, and Johnson stated that he would attempt to contact Clouser's attorney. Johnson asked Clouser to sign consent-to-search forms for two packages that were seized after his arrest as well as for six electronic devices that were seized during the original search. Clouser asserts that he again asked for a lawyer. According to Clouser, Johnson then responded that he did not believe that any attorneys were available, that it would help Clouser later if he signed the consent forms, and that, if Clouser did not sign the forms, he would just get a search warrant anyway. Clouser eventually relented and signed the forms. According to Clouser, defendant Vogle was aware of his request for counsel and was a witness to his signing the consent forms. Clouser claims that by asking him to sign the consent forms without his attorney, defendants Johnson and Vogle violated his Sixth Amendment right to counsel.

Clouser alleges that defendant Johnson repeatedly continued his preliminary hearing knowing that there was no probable cause to hold him and that a

preliminary hearing would fail.  Clouser was federally indicted on October 5, 2011,[1] and all local charges were withdrawn before a preliminary hearing was held.

Clouser alleges that defendant Johnson intentionally or with reckless disregard included false statements in the affidavit for probable cause for the search warrant and that those statements were necessary to the finding of probable cause.  More specifically, Clouser alleges that Johnson stated in the affidavit of probable cause that he had been involved in Clouser's arrest and conviction in 2003 for manufacturing MDMA.  According to Clouser, although he was arrested

---

[1] The court may take judicial notice of adjudicative facts that are not subject to reasonable dispute because they are "generally known within the trial court's territorial jurisdiction" or because they "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed.R.Evid. 201(b)(2).  The docket and documents in Clouser's federal criminal case—*United States v. Clouser,* 1:11-cr-00282 (M.D.Pa.)—are public records of which we can take judicial notice. *See Wilson v. McVey*, 579 F. Supp. 2d 685, 688 (M.D. Pa. 2008)(taking judicial notice of court docket); *S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group Ltd.*, 181 F.3d 410, 426 (3d Cir. 1999)(stating that the court "may take judicial notice of another court's opinion—not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity").  According to the docket in Clouser's federal criminal case, after he was indicted for manufacturing, distributing, and possessing with the intent to manufacture and distribute a mixture and substance containing a detectable amount of Fentanyl and methamphetamine, he waived his right to prosecution by indictment and consented to prosecution by information, and he was charged by a superseding information with two counts of using a communication facility in causing and facilitating the commission of a drug offense in violation of 21 U.S.C. § 843(b).  He then pleaded guilty to the two counts in the superseding information and, on June 11, 2012, Judge Jones sentenced Clouser to a total of 96 months imprisonment.

in 2003, that arrest was for delivery of Heroin and escape, and at no time has he been arrested for or convicted of manufacturing MDMA. Clouser also alleges that Johnson stated in the affidavit of probable cause that he had confirmed that Clouser ordered and received all of the components to manufacture Fentanyl. According to Clouser, the evidence that he received in discovery in his criminal trial shows that he did not order or receive any of the main precursors, or the incidents to make them, of Fentanyl. Clouser alleges that Johnson's false statements resulted in a warrant authorizing an illegal search in violation the Fourth Amendment, and defendants Vogle and Goshert were present and participated in the illegal search. Clouser also claims that by making false statements in order to subvert the processes that are meant to protect against illegal searches and seizures, Johnson violated his Fourteenth Amendment due process rights.

Clouser also alleges that defendant Johnson intentionally or with reckless disregard included false statements in the affidavit for probable cause for the warrant for his arrest. More specifically, Clouser alleges that Johnson stated in the affidavit of probable cause that, at the time of the search, a DEA chemist had identified all of the components necessary to manufacture Fentanyl. According to Clouser, however, the chemist identified only minor precursors of Fentanyl at the time of the search. That false statement, according to Clouser, rendered the arrest warrant illegal. While Clouser acknowledges that there were other, valid warrants

for his arrest for other outstanding charges, he alleges that those other charges were dealt with on April 11, 2011, and, after that date, the only thing holding him in custody was the invalid arrest warrant. Clouser claims that he suffered unlawful imprisonment in violation of the Fourth Amendment from April 11, 2011, until October 4, 2011.

According to Clouser, after his arrest, two packages were seized without a warrant and without probable cause. One of the packages was sent through the United States mail. The other was sent through UPS and was taken off the porch of his residence. Clouser believes that Johnson altered the chain-of-custody documents to make it appear that the package sent via UPS was sent through the United States mail. In response to discovery requests propounded during Clouser's criminal case, Johnson allegedly failed to submit a consent-to-search form for the package sent through the United States mail. Rather, he submitted two copies of the consent-to-search form for the package sent via UPS. Clouser believes this to have been an effort by Johnson to hide his tampering with evidence, and, according to Clouser, this violated his Fourth Amendment, Fifth Amendment, and Fourteenth Amendment rights.

Clouser further alleges that the defendants were involved in an incident in 2008 that was the subject of a federal lawsuit—*Perry v. Borough of Middletown,*

1:10-CV-00911 (Carlson, M.J.). That case was dismissed, in April of 2011, after the parties settled the case. According to Clouser, the defendants' involvement in that case shows a pattern of abuse and reckless disregard for civil rights by the defendants.

Clouser is seeking nominal, compensatory, and punitive damages.

Defendants Vogle and Goshert filed a motion to dismiss the complaint, and defendant Johnson filed a separate motion to dismiss some, but not all, of the claims against him. The parties have fully briefed the motions, and we address them in this Report and Recommendation.

### III. <u>Motion to Dismiss and Pleading Standards</u>.

In accordance with Fed.R.Civ.P. 12(b)(6), the court may dismiss a complaint for "failure to state a claim upon which relief can be granted." When reviewing a motion to dismiss, "[w]e must accept all factual allegations in the complaint as true, construe the complaint in the light favorable to the plaintiff, and ultimately determine whether plaintiff may be entitled to relief under any reasonable reading of the complaint." *Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010). In making that determination, we "consider only the complaint, exhibits attached to

the complaint, matters of public record, as well as undisputedly authentic documents if the [plaintiff's] claims are based upon these documents." *Id.* at 230.

"A Rule 12(b)(6) motion tests the sufficiency of the complaint against the pleading requirements of Rule 8(a)." *I.H. ex rel. D.S. v. Cumberland Valley Sch. Dist.*, 842 F. Supp. 2d 762, 769-70 (M.D. Pa. 2012). With respect to the benchmark standard for legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), continuing with our opinion in *Phillips [v. County of Allegheny,* 515 F.3d 224, 230 (3d Cir.2008)], and culminating recently with the Supreme Court's decision in *Ashcroft v. Iqbal* 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 209–10 (3d Cir. 2009).

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 677-78 (2009). The statement required by Rule 8(a)(2) must give the defendant fair notice of what the plaintiff's claim is and of the grounds upon which it rests. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007).

Detailed factual allegations are not required, but more is required than labels, conclusions, and a formulaic recitation of the elements of a cause of action. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "In other words, a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler, supra*, 578 F.3d at 211. "A complaint has to "show" such an entitlement with its facts." *Id.*

In considering whether a complaint fails to state a claim upon which relief can be granted, the court must accept as true all well-pleaded factual allegations in the complaint, and all reasonable inferences that can be drawn from the complaint are to be construed in the light most favorable to the plaintiff. *Jordan v. Fox Rothschild, O'Brien & Frankel, Inc.,* 20 F.3d 1250, 1261 (3d Cir. 1994). A court, however, "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir. 1997). Additionally, a court need not "assume that a . . . plaintiff can prove facts that the . . . plaintiff has not alleged." *Associated Gen. Contractors of Cal. v. California State Council of Carpenters,* 459 U.S. 519, 526 (1983).

In conducting a review of the adequacy of a complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth. While

> legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Iqbal, supra,* 556 U.S. at 679.

Thus, following *Twombly* and *Iqbal,* a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, it must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation. In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis:

> First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'

*Santiago v. Warminster Tp.,* 629 F.3d 121, 130 (3d Cir. 2010)(quoting *Iqbal, supra,* 556 U.S. at 675 & 679).

A complaint filed by a *pro se* litigant is to be liberally construed and "'however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson, supra,* 551 U.S. at 94 (quoting *Estelle v. Gamble,* 429 U.S. 97, 106 (1976)). Nevertheless, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina,*

10

*Inc.*, 704 F.3d 239, 245 (3d Cir. 2013). Thus, a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, a *pro se* complaint must recite factual allegations that are sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation, set forth in a "short and plain" statement of a cause of action.

## IV. Discussion.

### A. All of the Claims Against Defendant Goshert Should Be Dismissed, and All of the Claims Other than the Sixth Amendment Claim Against Defendant Vogel Should Be Dismissed.

Defendants Goshert and Vogel contend that the complaint fails to state a claim upon which relief can be granted against them because, although they are alleged to have participated in the search, they are not alleged to have had any involvement in the application for the search warrant. They further contend that they are entitled to qualified immunity because they reasonably relied on the validity of the search warrant in executing the search and there are no allegations that they were involved in preparing the search warrant application or that they knew that the application contained false statements. Defendant Goshert further contends that he cannot be liable as a supervisor because there are no allegations that he tolerated past or ongoing unconstitutional behavior or that he implemented an unconstitutional policy or procedure.

11

In his brief in opposition, Clouser concedes that the court should dismiss the claims against defendants Goshert and Vogle arising from the search and that the court should dismiss all claims against defendant Goshert. Clouser contends, however, that his Sixth Amendment denial-of-counsel claim against defendant Vogle should not be dismissed.

Vogel contends in his reply brief that the complaint fails to state a Sixth Amendment claim against him and that he is entitled to qualified immunity because the complaint does not allege that Clouser specifically requested an attorney from him. Vogle also contends that since Clouser's preliminary hearing was continued and he was not indicted until October 5, 2011, Clouser did not have a right to counsel at the time of the March 29, 2011 meeting in the CID office. Therefore, Vogle contends that the complaint fails to state a Sixth Amendment claim upon which relief can be granted and that he is entitled to qualified immunity. Because fairness requires that the nonmoving party have an opportunity to respond to any arguments presented by the moving party, arguments raised for the first time in a reply brief are generally waived. *Brooks v. Reitz*, 1:12-CV-2045, 2013 WL 2039096 at *3 n.2 (M.D. Pa. May 14, 2013)(Conner, J.). Defendant Vogle raised the arguments regarding the Sixth Amendment claim for the first time in his reply brief, and so we deem those arguments waived.

In any event, Vogel's arguments are without merit. Clouser alleges that defendant Vogel was aware of his request for counsel and that he was a witness to the consent forms signed by Clouser during the March 29, 2011 meeting at the CID office. Based on these allegations, Clouser has sufficiently alleged personal involvement on the part of defendant Vogel in the alleged denial of counsel. Moreover, the Supreme Court "has held that the right to counsel guaranteed by the Sixth Amendment applies at the first appearance before a judicial officer at which a defendant is told of the formal accusation against him and restrictions are imposed on his liberty." *Rothgery v. Gillespie Cnty.* 554 U.S. 191, 194 (2008). Here, Clouser alleges that prior to the March 29, 2011 meeting, he was remanded to Dauphin County Prison in lieu of $250,000 bail. So, even though Clouser was not indicted until October of 2011, we cannot say as a matter of law on the basis of the allegations in the complaint that Clouser's right to counsel had not attached at the time of the March 29, 2011 meeting.

Accordingly, we recommend dismissal of all claims against Goshert and Vogle expect for Clouser's Sixth Amendment claim against Vogle.

**B. The Fifth Amendment Claim and the Substantive Due Process Claim Against Defendant Johnson Should Be Dismissed.**

Defendant Johnson moves to dismiss only some of the claims against him. More specifically, he moves to dismiss the Fifth Amendment claims, the Fourteenth Amendment due process claims, and all claims asserted against him in his official capacity. Johnson does not move to dismiss the Fourth Amendment or Sixth Amendment claims against him in his individual capacity. Although Clouser agrees that all Fifth Amendment claims should be dismissed, he asserts that his Fourteenth Amendment procedural due process claims against Johnson and the claims against Johnson in his official capacity should not be dismissed.

Defendant Johnson contends that since the Fourth Amendment governs Clouser's claims, the Fourteenth Amendment is inapplicable. When a particular Amendment is explicitly applicable to conduct, "that Amendment, not the more generalized notion of substantive due process," governs. *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 842 (1998). Because the Fourth Amendment is applicable in this case, Clouser cannot assert a substantive due process claim. He concedes as much, but he asserts that his procedural due process claim should survive. The only argument that defendant Johnson makes for dismissal of the Fourteenth Amendment claims is that the Fourth Amendment applies and the only case law he cites is case law that substantive due process does not apply when a particular

constitutional Amendment applies. Defendant Johnson has not specifically addressed the procedural due process claims. He has not shown that dismissal of those claims is appropriate, and so, at this point, we do not recommend that Clouser's procedural due process claims be dismissed.

Johnson contends that the claims against him in his official capacity should be dismissed because they are barred by the Eleventh Amendment. In the absence of consent, a suit in federal court against the state or one of its agencies is barred by the Eleventh Amendment. *Alabama v. Pugh*, 438 U.S. 781, 782 (1978)(per curiam). While Eleventh Amendment immunity applies to states, "its protections do not extend to counties." *Chisolm v. McManimon*, 275 F.3d 315, 322 (3d Cir. 2001). "Rather, for Eleventh Amendment immunity to apply, a court must determine that a state is a real party-in-interest." *Id.*

Claims against state officials in their official capacities for damages are treated as suits against the state and are barred by the Eleventh Amendment. *See Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89 (1984). "Moreover, a suit may be barred by the Eleventh Amendment even though a state is not named a party to the action, so long as the state is deemed to be the real party in interest." *Benn v. First Judicial Dist. of PA,* 426 U.S. 233, 239 (3d Cir. 2005). The United States Court of Appeals for the

15

Third Circuit has identified numerous factors to be considered in determining whether an entity is an arm or alter ego of the state. *Febres v. Camden Bd. of Educ.,* 445 F.3d 227, 229 (3d Cir. 2006). "The party asserting immunity bears the burden of production and persuasion." *Id.*

Clouser argues that Johnson is an employee of Dauphin County, not the Commonwealth of Pennsylvania, and, thus, he contends that Johnson's Eleventh Amendment argument is without merit. Johnson has not filed a reply brief disputing that he is a county employee, rather than a state employee, or addressing the factors relevant to whether the state is the real party in interest. Given that Clouser alleges in the complaint that Johnson is a member of the Dauphin County Drug Task Force, at this point it is reasonable to infer that Johnson is a county employee, rather than a Commonwealth employee. Accordingly, we will not recommend that the claims against Johnson in his official capacity be dismissed on the basis of the Eleventh Amendment.

In a related argument, Johnson contends that he does not fall within the definition of a person under § 1983. While "neither a State nor its officials acting in their official capacities are "persons" under § 1983," *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989), a county and county officials acting in their official capacities are. *See Monell v. Department of Social Servs.,* 436 U.S. 658,

690 (1978)(holding that municipalities and other local government bodies are persons within the meaning of § 1983). Again, given the allegations in the complaint that Johnson is a member of the Dauphin County Drug Task Force, at this point it is reasonable to infer that Johnson is a county employee, rather than a Commonwealth employee. Accordingly, we will not recommend that the claims against Johnson in his official capacity be dismissed on the basis that he is not a person under § 1983.

V. **Recommendations.**

Accordingly, for the foregoing reasons, **IT IS RECOMMENDED** that the motion (doc. 17) to dismiss filed by defendants Goshert and Vogel be granted in part and denied in part. It is recommended that all claims against defendant Goshert be dismissed and that all claims against defendant Vogel be dismissed except the Sixth Amendment claim. **IT IS FURTHER RECOMMENDED** that the motion (doc. 28) to dismiss filed by defendant Johnson be granted in part and denied in part. It is recommended that the Fifth Amendment and substantive due process claims against defendant Johnson be dismissed. It is recommended that the Fourth Amendment, Sixth Amendment, and procedural due process claims against defendant Johnson, in both his individual and

official capacities, not be dismissed. **FINALLY, IT IS RECOMMENDED** that the case be remanded to the undersigned for further proceedings.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 19th day of June, 2013.

*S/Susan E. Schwab*
Susan E. Schwab
United States Magistrate Judge