**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **NATHAN W. CLOUSER,** | : | **CIVIL NO. 1:12-CV-1870** |
| | : | |
| **Plaintiff** | : | **(Chief Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **TODD JOHNSON**, *et al.*, | : | |
| | : | |
| **Defendants** | : | |

## <u>MEMORANDUM</u>

In the above-captioned civil rights litigation, *pro se* plaintiff Nathan W.

Clouser ("Clouser") asserts a variety of claims arising from the pre-indictment

investigative activities of Dauphin County Drug Task Force ("DTF") officers Todd

Johnson ("Johnson") and Regis Vogel ("Vogel") in <u>United States v. Clouser</u>, No.

1:11-CR-00282, and Clouser's guilty plea to the resulting charges.  The court notes

relevantly that Clouser neither attempted to withdraw nor appealed his guilty plea

and acceded to the sentence imposed in that case.  Presently before the court in the

above-captioned matter are defendants' motion (Doc. 93) for summary judgment

based on <u>Heck v. Humphrey</u>, 512 U.S. 477 (1994), the report (Doc. 110) of Magistrate

Judge Susan E. Schwab, recommending the court grant in part and deny in part

said motion, and the objections (Docs. 112-13) of both parties to Judge Schwab's

report.  Defendants also appeal Judge Schwab's order (Doc. 111) granting plaintiff's

motion (Doc. 74) to compel production of certain evidence.  (See Doc. 115).  For the

reasons that follow, the court will adopt in part and reject in part the Magistrate

Judge's recommendation and deny defendants' appeal.

## I. __Background__

### A.   __Factual Background & Procedural History__[1]

The factual background of this matter is largely undisputed.[2]  DTF officer

Johnson submitted an application for a search warrant for Clouser's residence on

March 14, 2011.  (Doc. 96 ¶ 1).  In the affidavit, Johnson stated that he had known

Clouser for years "and assisted in his arrest and conviction for manufacturing

'Molly' (MDMA)[3] in 2003."  (Id. ¶ 2).  Defendants acknowledge that this information

is inaccurate, and that Clouser was not charged with manufacturing Molly in 2003,

but rather pled guilty to delivery of heroin and escape in 2003.  (See id. ¶ 3).  Clouser

did not plead guilty to delivery of "Molly" until 2006.  (See id. ¶ 4).  In his affidavit of

---

[1] In accordance with the standard of review for a motion for summary judgment, the court will present the facts in the light most favorable to Clouser, the nonmoving party.  See infra at II(A).  Except as noted, the court's discussion of the factual background derives from Magistrate Judge Schwab's report (Doc. 110), familiarity with which is presumed.

[2] As Magistrate Judge Schwab notes, Clouser offers only a handful of blanket denials in his counterstatement of facts in contravention of Local Rule 56.1, which requires a party opposing summary judgment to cite record evidence supporting its version of the facts.  See LOCAL RULE OF COURT 56.1 (requiring Rule 56 statements of fact to "include references to the parts of the record that support the statements" and admonishing that the moving party's statement of facts "will be deemed to be admitted unless controverted by . . . the opposing party").  As a consequence of this rule, the defendants' statement of facts is deemed to be admitted for purposes of the instant summary judgment motion.

[3] MDMA stands for methylenedioxymethamphetamine, more commonly known as ecstasy.

probable cause, officer Johnson noted, *inter alia*, that Clouser and his girlfriend were known heroin addicts, that Clouser told a confidential informant that he was in the process of ordering chemicals from China for the production of fentanyl, and that the informant discovered and copied a list of chemicals from Clouser's e-mail which he gave to Johnson. (Id. ¶ 5). According to the affidavit, Johnson's contact at the Drug Enforcement Administration ("DEA") confirmed that the chemicals were component ingredients for the production of fentanyl. (Id.) Johnson also detailed the results of a search warrant executed on Clouser's Yahoo! email account and information received from chemical lab suppliers, both of which indicated that Clouser had been ordering the chemical components of fentanyl. (Id.) Based on the affidavit, a judge approved the warrant application on March 14, 2011. (Id. ¶ 7).

Vogel and Johnson, in addition to other DTF officers, DEA officers, and members of the Pennsylvania State Police ("PSP"), executed the search warrant on March 15, 2011. (Id. ¶ 8). Officers took Clouser into custody immediately upon entry and advised him of his <u>Miranda</u> rights. (Id. ¶ 9). When the search was completed, Clouser was placed under arrest for existing bench warrants and again read his <u>Miranda</u> rights. (Id. ¶ 11). DTF officers transported Clouser to Central Booking in Harrisburg, Dauphin County, where he was arraigned and remanded to Dauphin County Prison in lieu of bail. (Id. ¶ 12). Also on March 15, 2011, based on evidence found during the search of Clouser's residence, Johnson filed a police criminal complaint requesting a warrant for Clouser's arrest; the warrant issued the same day. (Id. ¶¶ 17-19). Clouser contends that Johnson's false statements in

3

the search warrant and arrest warrant applications violate the Fourth and Fourteenth Amendments.

On March 17, 2011, Clouser met with an intake person from the Dauphin County Public Defender's office and filled out paperwork formally requesting a public defender. (Id. ¶ 20). Clouser was never informed that a public defender had been assigned to his case. (Id. ¶ 21). On March 29, 2011, pursuant to an earlier PSP request, United States Postal Inspector Joseph Corrado intercepted and gave to Johnson a package addressed to Clouser which originated from China. (Id. ¶ 23). That same day, Clouser was transported from Dauphin County Prison to Dauphin County Criminal Investigation Division ("DCCID") offices at Johnson's request. (Id. ¶ 24). Johnson asked Clouser whether an attorney had yet been appointed to represent him, and Clouser said no. (See id. ¶ 25; Doc. 1 at 3). Johnson contacted the Public Defender's Office and was informed that no attorneys were available, and he relayed that information to Clouser. (Id. ¶¶ 26-28). Johnson then pressed Clouser to consent to a search of the U.S. Postal Service package intercepted by Inspector Corrado. (See id. ¶¶ 28-29; Doc. 1 at 5). Clouser signed the forms and consented to the search. (Id. ¶ 29). Defendants note that a United Parcel Service ("UPS") package sent to Clouser from Elemental Scientific, LLC, in Wisconsin was also intercepted as part of their investigation; Clouser never consented to a search of the UPS package, and it remains unopened in a Dauphin County evidence locker. (Id. ¶ 31-33).

On October 5, 2011, a federal grand jury returned an indictment charging Clouser with one count of manufacturing, distributing, and possessing with intent to manufacture and distribute a mixture and substance containing a detectable amount of fentanyl and methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 846.  See United States v. Clouser, No. 1:11-CR-00282, Doc. 1.  On January 23, 2012, the government filed a superseding information charging Clouser with two counts of use of a communication facility in the commission of a felony drug offense.  Id. at Doc. 23.  Clouser pled guilty to both counts on January 24, 2012, see id. at Doc. 39, and contemporaneously withdrew his pre-trial motion to suppress evidence which raised many of the arguments he now reasserts.  See id. at Docs.  24-25.  On June 11, 2012, Clouser was sentenced to forty-eight (48) months imprisonment on each count, to be served consecutively.  Id. at Doc. 48.  Clouser never directly appealed or collaterally challenged his conviction or sentence.

**B.    Procedural History**

Clouser filed a complaint (Doc. 1) initiating this action on September 19, 2012.  Clouser's complaint asserts a number of civil rights claims pursuant to the Fourth, Fifth, Sixth, and Fourteenth Amendments against defendants Johnson, Vogel, and John Goshert ("Goshert") arising from the investigation that ultimately led to his conviction in United States v. Clouser, No. 1:11-CR-00282.  On January 22, 2013, the court referred the matter to Magistrate Judge Schwab for pretrial management.  Following Rule 12 motion practice, the following claims remain: (1) a Fourth and Fourteenth Amendment claim against Johnson arising from the

5

March 15, 2011 search of Clouser's home; (2) a Fourth and Fourteenth Amendment claim against Johnson arising from the March 29, 2011 search and seizure of the Chinese package; (3) a Fourth Amendment claim against Johnson for false imprisonment and arrest from April 10, 2011 until October 5, 2011; and (4) a claim under the Sixth Amendment against both Johnson and Vogel for violation of Clouser's right to counsel during the March 29, 2011 interrogation.  (See Doc. 37 at 17-18; Doc. 44).[4]

Johnson and Vogel filed the instant motion (Doc. 93) for summary judgment on February 24, 2014, accompanied by a statement of material facts and supporting brief.  (Docs. 95-96).  On February 28, 2014, Clouser filed a brief (Doc. 99) opposing defendants' motion and a counterstatement of material facts (Doc. 100) which, in large part, admits the facts as stated by defendants.  Defendants filed a reply (Doc. 103) on March 14, 2014.  Defendants' primary contention before the Magistrate Judge, and presently before the court, is that the entirety of Clouser's remaining claims are barred by the favorable termination rule announced by the Supreme Court of the United States in Heck v. Humphrey, 512 U.S. 477 (1994).  In response, Clouser argues that none of his civil rights claims collaterally attack or impugn the validity of his underlying conviction, thus surviving the Heck bar to certain Section 1983 claims.

---

[4] Clouser previously conceded to the dismissal of all claims against Goshert. (See Doc. 34).

## C.  Report & Recommendation

Magistrate Judge Schwab issued a report and recommendation (Doc. 110) on May 19, 2014, recommending the court grant in part and deny in part defendants' summary judgment motion.  Magistrate Judge Schwab examined <u>Heck</u> and its progeny and ultimately concluded that <u>Heck</u>'s favorable termination rule bars only Clouser's false imprisonment claim regarding his 2011 confinement but does not bar his Fourth Amendment search and seizure claims or his Sixth Amendment right to counsel claims.  (<u>See</u> Doc. 110 at 18-30).  The Magistrate Judge focused her discussion almost exclusively on statute of limitations and claims accrual issues. (<u>See</u> <u>id.</u>)  Specifically, Judge Schwab held that: (1) Clouser's Fourth Amendment claims for unreasonable search and seizure accrued at the time of the March 15, 2011, search of his home and the March 29, 2011, seizure of a U.S. Mail package and, because no outstanding conviction yet existed, the claims are not barred by <u>Heck</u>; (2) Clouser's Sixth Amendment claims for violation of the right to counsel accrued during the March 29, 2011, custodial interrogation and, because no outstanding conviction yet existed, the claims are not barred by <u>Heck</u>; and (3) Clouser's Fourth Amendment false arrest and false imprisonment claim is appropriately construed as a malicious prosecution claim and *is* barred by <u>Heck</u>. (<u>See</u> <u>id.</u>)  Judge Schwab declined to address Clouser's Fourteenth Amendment claims stemming from Johnson's allegedly false warrant applications, finding that defendants had not expressly challenged those claims.  (Doc. 110 at 18 n.3).  Thus, Judge Schwab recommends the court grant defendants' motion only to the extent

7

it seeks dismissal of Clouser's claims pertaining to his confinement from April until October of 2011 but deny the motion in all other respects.  (Doc. 110 at 33).

## II.   <u>Standard of Review</u>

### A.   **Summary Judgment**

Through summary adjudication, the court may dispose of those claims that do not present a "genuine dispute as to any material fact" and for which a jury trial would be an empty and unnecessary formality.  <u>See</u> FED. R. CIV. P. 56(a).  The burden of proof is upon the non-moving party to come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief. <u>Pappas v. City of Lebanon</u>, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); <u>see</u> <u>also</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986).  This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the non-moving party on the claims. <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250-57 (1986); <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587-89 (1986).  Only if this threshold is met may the cause of action proceed.  <u>Pappas</u>, 331 F. Supp. 2d at 315.

### B.   **Magistrate Judge's Recommendation**

When a party objects to a magistrate judge's report and recommendation, the district court undertakes a *de novo* review of the contested portions of the report. <u>See</u> <u>Behar v. Pa. Dep't of Trans.</u>, 791 F. Supp. 2d 383, 389 (M.D. Pa. 2011) (citing <u>Sample v. Diecks</u>, 885 F.2d 1099, 1106 n.3 (3d Cir. 1989); 28 U.S.C. § 636(b)(1)(c)). In this regard, Local Rule of Court 72.3 requires written objections to "specifically identify the portions of the proposed findings, recommendations or report to which

objection is made and the basis for those objections." LOCAL RULE OF COURT 72.3;

also Behar, 791 F. Supp. 2d at 389 (citing Shields v. Astrue, Civ. No. 07-417, 2008

U.S. Dist. LEXIS 74519, at *6 (M.D. Pa. Sept. 8, 2008)).  The court will review the

uncontested portions of the magistrate judge's report for "clear error on the face of

the record." See Cruz v. Chater, 990 F. Supp. 375, 375-78 (M.D. Pa. 1998).

III.   **Discussion**

Defendants object to the Magistrate Judge's conclusion that Heck does not

bar those claims which arose before Clouser's conviction.  (See Doc. 113 ¶ 5).

Specifically, defendants assert that Judge Schwab's *ratio decidendi* erroneously

focuses on statute of limitations and claims accrual findings.  (See Doc. 114 at 15).

They emphasize that Clouser's conviction was never overturned and that the

critical issue is whether success on his Section 1983 claims *sub judice* would

necessarily imply the invalidity of his underlying conviction, *not* whether the

conviction was in effect at the time of claim accrual.  (See id. at 14-17).  On this

issue, the court is compelled to agree with defendants.

In Heck v. Humphrey, 512 U.S. 477 (1994), the Supreme Court concluded

that a plaintiff may not recover damages under Section 1983 if doing so would

necessarily impugn the validity of the plaintiff's prior conviction.  Heck, 512 U.S. at

486-87.  In particular, the Court held:

> [In] order to recover damages for allegedly
> unconstitutional conviction or imprisonment, or for other
> harm caused by actions whose unlawfulness would
> render a conviction or sentence invalid, a Section 1983
> plaintiff must prove that the conviction has been reversed

> on direct appeal, expunged by executive order, declared
> invalid by a state tribunal . . . , or called into question by a
> federal court's issuance of a writ of habeas corpus.  A
> claim for damages bearing that relationship to a
> conviction or sentences that has *not* been so invalidated
> is not cognizable under Section 1983.

Id.  In other words, proof that a plaintiff's underlying conviction has been vacated,

set aside, or otherwise altered is a prerequisite to any Section 1983 claim which

would imply the invalidity of that conviction.  See id.; Grier v. Klem, 591 F.3d 672,

677 (3d Cir. 2010) (observing that Heck "expanded the circumstances in which a

prisoner is barred from bringing a Section 1983 claim").  The Supreme Court

emphasized that its holding does not "engraft an exhaustion requirement upon

Section 1983, but rather . . . [operates to] deny the existence of a cause of action"

entirely.  Heck, 512 U.S. at 489.  The Court attempted to craft a bright line test in

order to: (1) avoid parallel litigation over issues of probable cause and guilt; (2)

prevent the creation of inconsistent resolutions of the same or similar issues; and

(3) preclude a defendant from collaterally attacking his conviction through a civil

suit.  See Royal v. Durison, 254 F. App'x 163, 165 (3d Cir. 2007).

Heck also announced a separate rule of deferred accrual, holding that "a

Section 1983 cause of action for damages attributable to an unconstitutional

conviction or sentence does not accrue until the conviction or sentence has been

invalidated."  Heck, 512 U.S. at 489.  Thus, Heck stands for two important, but

distinct, propositions: (1) Section 1983 claims that would impugn the validity or

imply the invalidity of an underlying criminal conviction are barred unless the

10

plaintiff can show that the conviction has been overturned; and (2) certain Section 1983 claims—but not all—operate under a rule of deferred accrual, such that the claim does not accrue for purposes of initiating a Section 1983 action until the conviction is overturned.  See id. at 486-87, 489.

More than a decade later, in Wallace v. Kato, 549 U.S. 384 (2007), the Court reexamined the accrual concerns that often arise in the application of Heck.  The Court noted that Section 1983 claims "sometimes accrue before the setting aside of—indeed, even before the existence of—the related criminal conviction," and that extending Heck's deferred accrual rule to these cases put Section 1983 plaintiffs in the impractical position of speculating whether charges will be brought, whether the prosecution will result in a conviction, and whether the pending civil action might impugn that conviction.  See Wallace, 549 U.S. at 393-94.  In answer to this concern, the Court substantially narrowed the deferred accrual rule announced in Heck, explaining that:

> [T]he Heck rule for deferred accrual is called into play only when there exists "a conviction or sentence that has *not* been . . . invalidated," that is to say, an "outstanding criminal judgment."  It delays what would otherwise be the accrual date of a tort action until the setting aside *of an extant conviction* which success in that tort action would impugn.

Id. at 393 (emphasis in original).  The Magistrate Judge's report suggests that this language merges the substantive and claims accrual rules of Heck, making the latter an element of the former.  (See Doc. 110, *passim*).  The court disagrees with this reading of Wallace.

11

The Court's holding in <u>Wallace</u> does not, at least on its face, modify <u>Heck</u>'s substantive bar to a cause of action; rather, the decision appears to alter and, indeed, erode only <u>Heck</u>'s previously broad rule of deferred accrual. <u>See</u> <u>Wallace</u>, 549 U.S. at 392-94. The <u>Wallace</u> Court did not hold that a valid conviction at the time a claim accrues is a prerequisite to application of <u>Heck</u>'s claim bar; it held only that false imprisonment claims, for statute of limitations purposes, accrue at the time that the defendant becomes held pursuant to legal process. <u>See</u> <u>id.</u> at 391-92 ("We conclude that the statute of limitations on petitioner's Section 1983 claim commenced to run when he appeared before the magistrate and was bound over for trial."). Because the plaintiff waited more than two years from the time he was bound over for trial to bring his false imprisonment claim, the <u>Wallace</u> Court concluded that the claim was time-barred. <u>See</u> <u>id.</u> at 397.

A close review of the <u>Wallace</u> decision renounces any conflation of <u>Heck</u>'s substantive bar with its accrual principles. While rejecting what it characterized as a "bizarre extension" of <u>Heck</u>'s timing rules that would defer the *accrual* of Section 1983 claims until an anticipated but speculative future conviction is overturned, the Court noted:

> If a plaintiff files a false-arrest claim before he has been convicted . . . , it is within the power of the district court, and in accord with common practice, to stay the civil action until the criminal case or the likelihood of a criminal case is ended. *If the plaintiff is ultimately convicted, and if the stayed civil suit would impugn that conviction,* <u>Heck</u> *will require dismissal; otherwise, the civil action will proceed, absent some other bar to suit.*

Id. at 393-94 (emphasis added).  In other words, the Wallace Court suggests that although Heck's deferred accrual rule does not apply to the plaintiff's claim, Heck's *substantive bar* may nonetheless ultimately preclude the claim, even though there was no extant conviction at the time the claim accrued.  See id.  The Court neither held nor implied that its decision requires a conviction at the time a Section 1983 claim accrues in order to apply the substantive Heck bar; if that were the case, the system of stays and dismissals developed by the Court would be unnecessary.  See id.  The course suggested in Wallace affirms what this court today observes: that Heck announced two distinct rules—one articulating the parameters of its substantive bar to Section 1983 claims, and another governing when those claims accrue—and Wallace altered only the latter.[5]

In sum, the court declines to adopt the proposition that Wallace erodes Heck's primary holding which would otherwise bar Section 1983 claims accruing prior to a defendant's criminal conviction.  Such an interpretation would effectively allow any Section 1983 claim to proceed—even if its success would wholly invalidate

---

[5] In the wake of Wallace, the Third Circuit decided Dique v. N.J. State Police, 603 F.3d 181 (3d Cir. 2010), stating that "the Heck bar is applicable only when, at the time the § 1983 suit would normally accrue, there is an *existing* criminal conviction." Id. at 187 (emphasis in original).  Dique, however, raised only claims accrual and statute of limitations issues.  See id. at 185-88 (determining when selective enforcement claim accrued and holding that statute of limitations barred claim).  The panel observed that Wallace supplanted Heck's deferred accrual rule, holding that the statute of limitations on Dique's selective enforcement claim began to run at the time of his detention pursuant to legal process, not when an anticipated conviction is overturned.  See id.  Dique brought his claim more than two years after it accrued; thus, the panel held his claim was time-barred.  See id. at 188.

the plaintiff's underlying criminal conviction—so long as the plaintiff was not yet
convicted at the time the claim accrued.  This result is not supported by <u>Wallace</u>,
nor is it consistent with the primary rationales of <u>Heck</u>.  To hold otherwise would
undercut the Court's articulated interests in avoiding parallel litigation, preventing
inconsistent resolutions, and barring validly convicted defendants from collaterally
attacking their convictions through civil suits.  <u>See</u> <u>Royal</u>, 254 F. App'x at 165.
Consequently, the court declines to adopt the Magistrate Judge's report and
recommendation to the extent it suggests that the bulk of Clouser's claims may
proceed simply because he had not yet been convicted at the time the claims
accrued.

   This does not end the court's analysis, however, because the existence of a
valid conviction does not necessarily preclude all Section 1983 claims.  The Third
Circuit has held that district courts must undertake a fact-intensive inquiry for each
claim raised by the plaintiff and determine whether success on that claim would
necessarily impugn the integrity of the plaintiff's criminal conviction.  <u>See</u> <u>Gibson v.
Superintendent, N.J. Dep't of Law & Pub. Safety</u>, 411 F.3d 427, 450 (3d Cir. 2005),
*overruled on other grounds by* <u>Dique</u>, 603 F.3d at 188; <u>see</u> <u>also</u> <u>Brown v. Chardo</u>, No.
1:11-CV-0638, 2012 U.S. Dist. LEXIS 39056, at *21-22 (M.D. Pa. Mar. 22, 2012) ("[T]o
determine whether the bar applies, the district court must determine whether a
judgment for the plaintiff in the Section 1983 action would necessarily imply the
invalidity of the plaintiff's conviction or sentence.").  In <u>Heck</u>, the Court offered two
examples as guidance to district courts.  <u>Heck</u>, 512 U.S. at 487 nn. 6-7.  The Court

14

observed that its substantive bar *would* preclude a Fourth Amendment claim for unreasonable seizure brought by a state inmate convicted of resisting arrest because, to prevail on that claim, "he would have to negate an element of the offense of which he had been convicted." Heck, 512 U.S. at 486-87 n.6. In contrast, the court indicated that, because of evidentiary doctrines like independent source and inevitable discovery, claims "for damages attributable to an allegedly unreasonable search may lie even if the challenged search produced evidence that was introduced in a state criminal trial resulting in the Section 1983 plaintiff's still-outstanding conviction" because the claim, "even if successful, would not *necessarily* imply that the plaintiff's conviction was unlawful." Id. at 486-87 n.7 (emphasis in original). Through this prism, the court will address each of plaintiff's remaining Section 1983 claims.

### A.    Fourth Amendment Search

Clouser contends that Johnson violated his Fourth Amendment right to be free from unreasonable searches and seizures by entering and searching his home on March 15, 2011, pursuant to an illegally obtained search warrant and by seizing the U.S. Postal Service package on March 29, 2011, without a warrant or probable cause. (See Doc. 1 at 3-5). As Clouser notes, Heck "typically does not bar actions for Fourth Amendment violations." Sanders v. Downs, 420 F. App'x 175, 179 (3d Cir. 2011) (citing Heck, 512 U.S. at 487 n.7); also Broadwater v. Fow, 945 F. Supp. 2d 574, 583-84 (M.D. Pa. 2013) (holding same and allowing Fourth Amendment search and excessive force claims to proceed under Heck when judgment on those claims

does not necessarily invalidate outstanding conviction).  See Heck, 512 U.S. at 487 n.7 (success on Section 1983 search or seizure claim does not "necessarily" imply invalidity of the underlying conviction).

Defendants contend broadly that the evidence seized during the March 15 search is the only evidence supporting Clouser's guilty plea, and that any finding that the search was unlawful "would necessarily implicate the validity of Clouser's conviction."  (Doc. 114 at 16).  Yet, defendants do not refute Heck's observation that doctrines such as inevitable discovery and independent source typically remove unlawful search or seizure claims from its substantive bar, see Heck, 512 U.S. at 487 n.7, or the Third Circuit's oft-repeated holding that Fourth Amendment claims are not categorically barred by Heck.  See Sanders, 420 F. App'x at 179.  In sum, defendants simply cannot establish that Clouser's success on his Fourth Amendment search and seizure claim would invalidate his conviction for unlawful use of a communication facility.  Consistent with Supreme Court and Third Circuit jurisprudence, the court concludes that Clouser's unlawful search and seizure claims are not subject to Heck's substantive bar.

### B.    Fourth Amendment False Arrest/Imprisonment

The court agrees with Judge Schwab's recommendation as to Clouser's claims relating to his confinement from April 11 until October 4, 2011.  (See Doc. 110 at 25-27).  Clouser acknowledges that his initial confinement was supported by other, valid warrants for unrelated offenses, but contends that those charges were resolved on April 11, 2011. (Doc. 96 ¶ 14).  According to Clouser, as of April 11, 2011,

the only thing holding him in state custody was the invalid arrest warrant obtained by Johnson on March 15, 2011. (See Doc. 96 ¶¶ 16-19). Hence, Clouser asserts a claim for unlawful arrest and confinement in violation of the Fourth Amendment. (See Doc. 1 at 4-5).

Magistrate Judge Schwab appropriately construes Clouser's claim for false arrest and imprisonment as one for malicious prosecution. The Third Circuit has held that claims for unlawful confinement for a time period *after* a defendant has been arraigned "are more accurately characterized as malicious prosecution claims than false imprisonment claims." Xenos v. Hawbecker, 441 F. App'x 128, 132 (3d Cir. 2011) (citing Antonelli v. Foster, 104 F.3d 899, 900 (7th Cir. 1997) ("A suit for damages for confinement pursuant to a warrant would also be a suit for malicious prosecution . . . which can succeed only if the prosecution fails."); see also Myers v. Koopman, 738 F.3d 1190, 1195 (10th Cir. 2013) (holding that post-arrest detention "pursuant to a validly issued—if not validly supported—arrest warrant" raises a malicious prosecution claim). As a consequence, Magistrate Judge Schwab concludes that Clouser's claim falls squarely within Heck's substantive claims bar. (Doc. 110 at 26-27 (citing Heck, 512 U.S. at 486-87 (holding that malicious prosecution claim is barred absent favorable termination)). The court is in full agreement with this resolution and will adopt the same. See Xenos, 411 F. App'x at 132 (holding that Heck bars the plaintiff's false arrest claim when the arrest was effectuated pursuant to a bench warrant and criminal information).

### C.      Sixth Amendment Right to Counsel

Clouser also asserts a Sixth Amendment claim for violation of his right to counsel during custodial interrogation.  Specifically, Clouser asserts that on March 29, 2011, in the absence of counsel, DTF officers Johnson and Vogel pressed him to consent to a search of a package addressed to Clouser and intercepted by the Postal Inspector at the officers' request.  (See Doc. 1 at 5-6).  Defendants admit in their statement of facts that: (1) Johnson called the Dauphin County Public Defender's Office and was advised that no attorney was available; (2) Johnson and Vogel continued with their meeting with Clouser; and (3) Johnson and Vogel obtained Clouser's consent to search the package.  (Doc. 96 at ¶¶ 26-29).  Clouser contends that these actions deprived him of his Sixth Amendment right to counsel.  See Montejo v. Louisiana, 556 U.S. 778, 786 (2002) (quoting United States v. Wade, 388 U.S. 218, 227-228 (1967)) (holding that "once the adversary judicial process has been initiated, the Sixth Amendment guarantees a defendant the right to have counsel present at all 'critical' stages of the proceedings").

Defendants contend that Heck and its progeny categorically bar any Sixth Amendment claim because "Clouser's consent to search the U.S. Postal Service package was referenced during the recitation of facts [during Clouser's guilty plea colloquy]," so "any vitiation of Clouser's consent to search that package would necessarily implicate the validity of Clouser's conviction."  (Doc. 114 at 16-17).  Other than generally restating the rule of Heck, defendants fail to establish exactly which aspect of Clouser's conviction would necessarily be invalidated by Clouser's

success on his Sixth Amendment right to counsel claim, or how.  (See Doc. 114 at

16-17 (contending broadly that Heck bars the Sixth Amendment claim)).  In

essence, defendants' argument mirrors their Heck defense to Clouser's Fourth

Amendment claim—that the evidence obtained from the purported violation of

Clouser's right to counsel is the same evidence supporting his guilty plea and

conviction such that a claim based on that violation "implicates" the conviction's

validity.  (Doc. 114 at 17).  Heck itself rejects this position.  See Heck, 512 U.S. at

487 n.7 (expressly stating that because of doctrines such as independent source

and inevitable discovery, evidentiary claims will not "necessarily" invalidate an

outstanding conviction).  As a result, the court concludes that Clouser's Sixth

Amendment claim is not barred by the favorable termination rule of Heck.[6]

### D.    Sovereign Immunity

The court also agrees with Magistrate Judge Schwab's conclusion that

defendants Johnson and Vogel are not entitled to sovereign immunity to the extent

Clouser asserts claims against them in their official capacities, albeit on different

grounds.  Defendants argue that they are part of the Pennsylvania Office of

Attorney General's ("POAG") drug task force, created pursuant to 53 PA. CONS.

---

[6] Clouser also asserts a claim under the Fourteenth Amendment solely
against defendant Johnson for including false or misleading statements in the
affidavits for the March 15, 2011, search and arrest warrants.  Defendant Johnson
has not moved for summary judgment as to this claim, and the court agrees with
Magistrate Judge Schwab that this claim should proceed.  (See Doc. 110 at 18 n.3
(observing that the defendants have not moved for summary judgment as to
Clouser's procedural due process claim)).

STAT. § 2303, which authorizes intergovernmental cooperation, and 42 PA. CONS.

STAT. § 8953(d), which provides that a municipal officer responding to the state's

"request for aid or assistance . . . shall be considered an employee of the

Commonwealth." (See Doc. 114 at 18-19).  Judge Schwab concludes that the record

fails to explain sufficiently the nature of the relationship between the POAG and the

municipal police officers for purposes of determining whether defendants were

responding to the state's "request for aid or assistance."  (See Doc. 110 at 30-33).

The court concludes that defendants' sovereign immunity defense fails for a

broader reason.

According to the plain text of the statute, the protections of Section 8953(d)

apply only when municipal officers are acting outside of their primary jurisdiction.

See 42 PA. CONS. STAT. § 8953(d) (granting statewide municipal police jurisdiction to

any "duly employed municipal police officer who is within this Commonwealth, *but

beyond the territorial limits of his jurisdiction*" (emphasis added)); see also Fulks v.

Gasper, 439 F. Supp. 2d 372, 378-79 (M.D. Pa. 2006) (rejecting sovereign immunity

argument when municipal police officer was a member of the Stroudsburg Borough

Police Department and events at issue took place in Stroudsburg, Pennsylvania).

Johnson and Vogel are both longtime DTF officers with the primary jurisdiction of

Dauphin County, Pennsylvania.  (See Doc. 94-2 at 8 (search warrant affidavit of

officer Johnson noting that he has been DTF since March 1993); see also Doc. 96

¶ 41 (stating that Johnson and Vogel are both DTF officers)).  Each Section 1983

violation asserted by Clouser, including execution of the search warrant and arrest

warrant, and the uncounseled interrogation, took place in Dauphin County, and thus within defendants' primary jurisdiction.  (Doc. 96 ¶ 5 (search warrant executed at Clouser's home in Millersburg, Dauphin County, and interrogation took place at DCCID offices in Dauphin County)).  Consequently, section 8953(d) does not apply, and defendants are not entitled to sovereign immunity.  See 42 PA. CONS. STAT. § 8953(a); Fulks, 439 F. Supp. 2d at 378-79.

## IV.   Conclusion

For all of the reasons stated herein, the court will grant defendants' motion for summary judgment to the limited extent the court concludes that the Supreme Court's decision in Heck bars Clouser's malicious prosecution claim arising from his confinement from April 11, 2011 through October 4, 2011.  The court will deny the motion to the extent defendants contend that Heck bars Clouser's Fourth and Sixth Amendment claims although, as explained above, the court's reasoning for rejecting defendants' position diverges from the analysis of the Magistrate Judge.  Defendants have not shown that Clouser's success on either his Fourth or Sixth Amendment claims would *necessarily* invalidate his conviction, and thus Heck does not bar those claims.  The court also rejects defendants' position that 42 PA. CONS. STAT. § 8953(a) extends the Commonwealth's sovereign immunity to defendants Johnson and Vogel.  Finally, because defendants' pending appeal (Doc. 115) of Judge Schwab's order (Doc. 111) granting Clouser's motion (Doc. 74) to compel is based entirely on defendants' sovereign immunity arguments, the court will deny defendants' appeal of said order.

21

In the interests of judicial economy and preservation of the court's and the

parties' resources, and in response to defendants' request, (Doc. 114 at 17), the court

will grant defendants leave to file an additional Rule 56 motion addressing the

merits of Clouser's remaining claims.  An appropriate order follows.


/S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania


Dated:        August 25, 2014