UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NATHAN W. CLOUSER, | : | 1:12-CV-01870 |
| | : | |
| Plaintiff | : | |
| | : | (Chief Judge Conner) |
| v. | : | |
| | : | (Magistrate Judge Schwab) |
| TODD JOHNSON, *et al.,* | : | |
| | : | |
| Defendants | : | |

## REPORT AND RECOMMENDATION

### I. Introduction.

The plaintiff, Nathan W. Clouser, claims that the defendants violated his Fourth and Fourteenth Amendment rights in connection with a search of his home as well as the seizure of two packages.   He also claims that during the course of pretrial proceedings in connection with state charges, the defendants violated his Sixth Amendment right to counsel by requesting that he consent to the search of two packages.   The defendants' second motion for summary judgment is currently pending, and for the reasons that follow, we recommend that it be granted in part and denied in part.   More specifically, we recommend that the defendants be granted summary judgment as to all the remaining claims except the Fourth Amendment seizure claim regarding the two packages.

## II. Background and Procedural History.

Clouser, proceeding *pro se*, began this action by filing a complaint naming as defendants the following officers: Todd Johnson, a detective in charge of the Dauphin County Drug Task Force (task force); Regis Vogle, III, an officer with the task force; and John Goshert, a supervisor of the Dauphin County Criminal Investigative Division (CID).   Clouser sued Vogel in his individual capacity, and he sued Johnson and Goshert in both their individual and official capacities.

Clouser claims that a March 2011 search of his residence violated his constitutional rights.   More specifically, Clouser alleges that defendant Johnson intentionally, or with reckless disregard for the truth, included false statements in the affidavit for probable cause for the search warrant and that those statements were necessary to the finding of probable cause.   According to Clouser, Johnson's false statements resulted in a warrant authorizing an illegal search in violation of the Fourth Amendment.   Clouser also claims that by making false statements in order to subvert the processes that are meant to protect against illegal searches and seizures, Johnson violated his Fourteenth Amendment right to due process of law.

After the search, Clouser alleges, he was arrested for attempt to manufacture Fentanyl and unlawful use of a communication device.   Clouser also alleges that defendant Johnson intentionally, or with reckless disregard for the truth, included

2

false statements in the affidavit for probable cause for the warrant for his arrest,

which, according to Clouser, rendered the arrest warrant illegal.

According to Clouser, after his arrest, two packages were seized without a

warrant and without probable cause.   One of the packages was sent through the

United States mail.   The other was sent through United Parcel Service (UPS) and,

according to Clouser, was taken off the porch of his residence.   Clouser believes

that Johnson altered the chain-of-custody documents to make it appear that the

package sent via UPS was sent through the United States mail.   Clouser asserts that

Johnson tried to hide his tampering with evidence, and, according to Clouser, this

violated his Fourth Amendment, Fifth Amendment, and Fourteenth Amendment

rights.   Clouser further contends that defendants Johnson and Vogle violated his

Sixth Amendment right to counsel by asking him to sign the consent-to-search forms

with regard to the two packages without his attorney being present.

In response to motions to dismiss the complaint filed by the defendants, the

Court dismissed all claims against defendant Goshert and all claims against

defendant Vogel except the Sixth Amendment claim.   The Court also dismissed the

Fifth Amendment and substantive due process claims against defendant Johnson.

The defendants then filed an answer to the complaint.   After the discovery period

expired, the defendants filed a motion for summary judgment contending that all of

Clouser's remaining claims are barred by the favorable-termination rule of *Heck v. Humphrey*, 512 U.S. 477 (1994).   Chief Judge Conner granted in part and denied in part that motion: he granted judgment in favor of the defendants on Clouser's Fourth Amendment false-arrest and false-imprisonment claims, but he denied the motion in all other respects.   Judge Conner also granted the defendants leave to file an additional motion for summary judgment addressing the merits of Clouser's remaining claims, which are the Sixth Amendment claim against defendants Vogel and Johnson and the Fourth Amendment and procedural due process claims against defendant Johnson based on the search of Clouser's residence and the seizure of the two packages.

Defendants Johnson and Vogel filed their second summary judgment motion on the remaining claims.   That motion is ripe, and for the reasons discussed below, we recommend that it be granted in part and denied in part.

## III.   Summary Judgment Standard.

The defendants have moved for summary judgment under Rule 56(a) of the Federal Rules of Civil Procedure, which provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ.

P. 56(a).   "Through summary adjudication the court may dispose of those claims that do not present a 'genuine dispute as to any material fact' and for which a jury trial would be an empty and unnecessary formality." *Goudy-Bachman v. U.S. Dept. of Health & Human Services*, 811 F. Supp. 2d 1086, 1091 (M.D. Pa. 2011)(quoting Fed.R.Civ.P. 56(a)).

The moving party bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record which demonstrate the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).   With respect to an issue on which the nonmoving party bears the burden of proof, the moving party may discharge that burden by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Once the moving party has met its burden, the nonmoving party may not rest upon the mere allegations or denials of its pleading; rather, the nonmoving party must show a genuine dispute by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or "showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed.R.Civ.P.

56(c).   If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate. *Celotex*, 477 U.S. at 322.   Summary judgment is also appropriate if the nonmoving party provides merely colorable, conclusory, or speculative evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).   There must be more than a scintilla of evidence supporting the nonmoving party and more than some metaphysical doubt as to the material facts. *Id.* at 252.   "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).

The substantive law identifies which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson,* 477 U.S. at 248.   A dispute about a material fact is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party. *Id.* at 248-49.   When "faced with a summary judgment motion, the court must view the facts 'in the light most favorable to the nonmoving party.'" *N.A.A.C.P. v. N. Hudson Reg'l Fire & Rescue*, 665 F.3d 464, 475 (3d Cir. 2011)(quoting *Scott v. Harris,* 550 U.S. 372, 380 (2007)).

6

At the summary judgment stage, the judge's function is not to weigh the evidence or to determine the truth of the matter; rather it is to determine whether there is a genuine issue for trial. *Anderson,* 477 U.S. at 249.   The proper inquiry of the court "is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250.

Summary judgment is warranted, after adequate time for discovery, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex,* 477 U.S. at 322.   "Under such circumstances, 'there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.'" *Anderson v. CONRAIL*, 297 F.3d 242, 247 (3d Cir. 2002)(quoting *Celotex,* 477 U.S. at 323).   "[S]ummary judgment is essentially 'put up or shut up' time for the non-moving party: the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." *Berckeley Inv. Group, Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006).

## IV.   The Undisputed Material Facts.

A party who seeks to resist a summary judgment motion must comply with Local Rule 56.1, which specifically provides that "[s]tatements of material facts in support of, or in opposition to, a motion shall include references to the parts of the record that support the statements" and that "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed admitted unless controverted by the statement required to be served by the opposing party."   Under this Rule, the failure to follow these instructions and appropriately challenge the material facts tendered by the moving party means that those facts must be deemed admitted.   Further, a party opposing a motion for summary judgment may not "rely merely upon bare assertions, conclusory allegations or suspicions." *Fireman's Ins. Co. of Newark v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982).   Rather, "[o]nce the moving party has supplied sufficient affidavits in support of its motion, the opposing party must respond by supplementing the record in some manner—whether by its own affidavits or otherwise—setting forth specific facts demonstrating that there is a genuinely disputed factual issue for trial." *Id.*

The defendants filed a statement of material facts, and Clouser filed a response denying only one of the facts asserted by the defendants.   In accordance with Local Rule 56.1, with the exception of the one fact disputed by Clouser, the

8

facts set forth by the defendants are deemed admitted for purposes of the pending summary judgment motion.   Clouser also submitted two additional facts.   As he has pointed to record evidence supporting those facts and the defendants have not disputed those facts, we consider those facts also as undisputed.   The following are the undisputed facts in connection with the summary judgment motion.

### A. The Search Warrant and Search of Clouser's Home.

On March 14, 2011, Johnson submitted an application for a search warrant in which he was the affiant. *Doc. 128* at ¶1.   In the Affidavit of Probable Cause contained in that application, Johnson stated, "I have known Nathan Clouser for several years and assisted in his arrest and conviction for manufacturing "Molly" (MDMA) in 2003." *Id*. at ¶2.   But as Clouser correctly notes in his complaint, in 2003, he was charged with and pleaded guilty to delivery of heroin and escape. *Id*. at ¶3.   It was in 2006 that Clouser was charged with and pleaded guilty to, *inter alia*, delivery of MDMA and possession, with intent to use, drug paraphernalia. *Id*. at ¶4.[1]

In the affidavit of probable cause, Johnson also stated:

_____

[1] The full statement of fact set forth by the defendant reads in full: "It was in 2006 that Clouser was charged with and pled guilty to, *inter alia*, delivery of MDMA and 'possess[ion of], with intent to use, drug paraphernalia for the purpose of . . .

In the afternoon of March 3, 2011, I was able to speak with the confidential informant (C.I.).   The C.I. stated that Nathan Clouser and his girlfriend are heroin addicts.   Cloused [sic] made a batch of Fentanyl last week which they used until it ran out.   Clouser has spoken to the C.I. and indicated he was in the process of ordering chemicals from China to manufacture more Fentanyl.   Clouser has shown the C.I. glassware he used to make the last batch of Fentanyl.   Clouser went on to tell the C.I. what chemicals he was ordering and from where.

Clouser and the C.I. are acquaintances and as such the C.I. is allowed to use Clouser's computer.   While using e-mail on the computer the C.I. came across a list of chemicals and places from which Clouser is attempting to purchase.   Clouser is using his E-mail to communicate with these companies in China.   Clouser's E-mail address is entropy@yahoo.com.   The C.I. at no direction from the police copied these items and sent it to the investigation officer.

.   .   .

On March 3, 2011 I contacted the Drug Enforcement Administration, Lab Division in Quantico Virginia.   I spoke with Senior Forensic Chemist and coordinator of the North East Clandestine Lab Team Jack Fasanello.   I provided Fasanello with the list of chemicals provided by the C.I.   From the list of chemicals Fasanello determined that Clouser is attempting to make Fentanyl a schedule I substance.

---

manufacturing . . . a controlled substance.'" *Doc. 128* at ¶4 (quoting the criminal information—*Doc. 129-3* at 47).   Clouser does not dispute that in 2006 he was charged with and pleaded guilty to delivery of MDMA and possession of drug paraphernalia.   He objects, however, to the defendants' quotation of the criminal information with regard to the drug paraphernalia charge which, with its selective omissions, makes it appear that the paraphernalia at issue was possessed with the intent to use it in connection with the manufacture of a controlled substance, when the paraphernalia at issue was, in fact, glassine baggies, which, according to Clouser, were used to store herion and were not used in the manufacturing process.

On March 4, 2011 I was contacted by the C.I. by text message.   The C.I. informed me that Clouser received a chemical at his apartment. (Molecular Seive Absorbent)   The C.I. said that [Clouser's girlfriend Amanda] Pickup received a chemical at her residence via UPS he needed for the manufacturing of Fentanyl.

On March 7, 2011 I checked with UPS and they did deliver a package to 109 Hillside Hts. Millersburg Pa 17061.   I was able to obtain a copy of the shipping order via UPS.   The order was shipped to 109 Hillside Heights Millersburg PA 17061 in the name of Amanda Pickup.   The package was from Gordon Post Lab Supply, 8893 Gulf Rd. North East Pa 16428 and contained a hazardous material. . . .

On March 7, 2011 I contacted Gordon Post Lab Supply. The owner, Gordon Post provided me with the following information.   Nathan Clouser placed an order for Pyridine on 2-26-11 and the lab shipped it out on 3-3-11.   The Pyridine was shipped to Amanda Pickup at 109 Hillside Heights Millersburg PA, 17061.   Clouser tried to order Sodium Boro Hydride but the lab did not have any in stock.   Gordon Post did say that Clouser was able to purchase Sodium Boro Hydride in November of 2010.   Gordon Post told me that Clouser provided entropy@yahoo.com as his email address to track his order.

On March 7, 2011 I contacted the Drug Enforcement Administration, Lab Division in Quantico Virginia.   I spoke with Senior Forensic Chemist and Coordinator of the North East Clandestine Lab Team Jack Fasanello.   Fasanello said Molecular Sieve Absorbent and Pyridine are needed ingredients in the manufacturing of Fentanyl.

.     .     .

On March 8, 2011 I executed a search warrant on Yahoo! Inc.   On March 9, 2011 Yahoo! Provided [sic] me with Clouser's e-mails which they had in there [sic] custody.   Several of the e-mails made reference to purchasing various types of chemicals.   There were e-mails in which he wired money to china [sic] in return for chemicals.   I spoke with Senior Forensic

11

> Chemist and Coordinator of the North East Clandestine Lab
> Team Jack Fasanello.   I provided Clouser's e-mails to Fasanello
> who is an expert in the manufacturing of Fentanyl.
>       On March 14, 2011 I received confirmation from
> Fasanello that Clouser and Pickup have ordered on line and
> obtained the components to produce Fentanyl.   These
> components are listed in the e-mails from Clouser to various
> chemical companies.   These components in the same location
> constitute criminal attempt to manufacture Fentanyl even if the
> conversion has not taken place yet.

*Id*. at ¶5 (ellipses and mistakes noted by [sic] in original).

In support of his statements in the affidavit of probable cause that Clouser had obtained the components necessary to manufacture Fentanyl, Johnson relied on the analysis of an expert in the manufacturing of Fentanyl, Senior Forensic Chemist and Coordinator of the North East Clandestine Lab Team Jack Fasanello from the Drug Enforcement Administration (DEA). *Id*. at ¶6.   Fasanello's analysis was conveyed to Johnson through several telephone conversations. *Id*.   The application for a search warrant was approved by a judge on March 14, 2011. *Id*. at 7.   The next day, March 15, 2011, Johnson and Vogel, as well as other members of the task force, the Pennsylvania State Police (PSP), and the DEA executed the search warrant. *Id*. at ¶8.

## B.   The United States Postal Service Package and Clouser's Meeting with Johnson and Vogel.

On March 7, 2011, the PSP requested that U.S. Postal Inspector Joseph Corrado check for names receiving mail at both of Clouser's addresses. *Id*. at ¶11. Pursuant to the PSP's request, on March 29, 2011, Inspector Corrado provided to Johnson a package addressed to Clouser from China. *Id*. at ¶12.   On that same date, at Johnson's direction, Clouser was transported from the Dauphin County Prison to the Dauphin County Criminal Investigation Division offices. *Id*. at ¶13.   Johnson asked Clouser whether he had gotten an attorney yet, and Clouser advised Johnson that he had met with an intake worker, not an attorney, from the Dauphin County Public Defender's Office. *Id*. at ¶14.   In fact, on March 17, 2011, Clouser met with an intake person from the Dauphin County Public Defender's Office and filled out the paperwork requesting a public defender. *Id*. at ¶9.   But a public defender never entered an appearance on Clouser's behalf regarding the state criminal charges. *Id*. at ¶10.[2]

---

[2] The defendants further assert that "prior to March 29, 2011, Clouser was never advised that his case had, in fact, actually been assigned a public defender or of the name of the public defender who was purportedly to be representing him regarding the state charges." *Doc. 128* at ¶10.   In support of that assertion the defendants cite to two pages from Clouser's deposition.   Those pages, however, do not support the defendants' assertion; in fact, those pages reveal that Clouser testified that he was

13

Johnson told Clouser that he would contact the Dauphin County Public Defender's Office and see if someone was available. *Id.* at ¶15.   Johnson placed a call to the Dauphin County Public Defender's Office, and he was advised that no attorney was available at that time. *Id.* at ¶16.   Johnson then conveyed that information to Clouser and asked Clouser to sign consent-to-search forms for, *inter alia*, a United States Postal Service package addressed to Clouser from Zhejiana, China. *Id.* at ¶17.   Johnson told Clouser that if he did not sign the consent forms, he would get a search warrant for the packages. *Id.* at ¶18.   Clouser agreed to sign the forms, and Vogel was a witness to his signature. *Id.* at ¶19.   Neither Johnson nor Vogel threatened Clouser in any way, and Clouser agreed to sign the consent-to-search forms because he believed that any evidence obtained would later be thrown out. *Id.* at ¶20.   Before he signed the consent forms, Clouser had repeatedly requested counsel to assist him during the meeting. *Doc. 135* at 1 (first numbered paragraph of Clouser's additional statements of fact).

---

assigned a lawyer. *Doc. 129-4* at 10 (Clouser Dep. at 27).   Although Clouser testified that he could not remember the lawyer's name, he testified that his first name was Paul and that he had been with the Public Defender's Office for a while. *Id.*   He testified that the attorney did not enter an appearance on his behalf because he "never went through a preliminary arraignment." *Id.*

### C.   The UPS Package.

A package shipped to Clouser through UPS from Elemental Scientific, LLC, in Appleton, Wisconsin, was also obtained as part of the criminal investigation. *Doc. 128*. at ¶21.   Clouser never executed a consent-to-search form regarding the UPS package, and it has never been opened. *Id*. at ¶22.   As of this date, it remains, unopened, in the Dauphin County evidence locker. *Id*. at ¶23.

According to Clouser, Johnson was in possession of this UPS package, as well as the United States Postal Service package discussed above, before any consent-to-search forms were signed. *Doc. 135* at 2 (second numbered paragraph of Clouser's additional statements of fact).

### D.   Clouser's Guilty Plea.

Clouser was indicted by a grand jury on federal criminal charges on October 5, 2011. *Doc. 128* at ¶24.   According to the docket in Clouser's federal criminal case, after he was indicted for manufacturing, distributing, and possessing with the intent to manufacture and distribute a mixture and substance containing a detectable amount of Fentanyl and methamphetamine, he waived his right to prosecution by indictment and consented to prosecution by information, and he was charged by a superseding information with two counts of using a communication facility in

causing and facilitating the commission of a drug offense in violation of 21 U.S.C. §

843(b).[3]   Clouser then pleaded guilty to the two counts in the superseding

information and, on June 11, 2012, Judge Jones sentenced him to a total of 96

months imprisonment.   The effective date of Clouser's federal sentence is April 11,

2011, which gives him credit for all time he was in jail after his outstanding warrants

were resolved. *Doc. 128* at ¶26.


## V.   Discussion.

### A. The Search of Clouser's Home.

Clouser alleges that defendant Johnson intentionally, or with reckless

disregard for the truth, included false statements in the affidavit of probable cause

for the search warrant and that those statements were necessary to the finding of

---

[3] The Court may take judicial notice of adjudicative facts that are not subject to reasonable dispute because they are "generally known within the trial court's territorial jurisdiction" or because they "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed.R.Evid. 201(b)(2).   The docket and documents in Clouser's federal criminal case—*United States v. Clouser,* 1:11-cr-00282 (M.D.Pa.)—are public records of which we can take judicial notice. *See Wilson v. McVey*, 579 F. Supp. 2d 685, 688 (M.D. Pa. 2008)(taking judicial notice of court docket); *S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group Ltd.*, 181 F.3d 410, 426 (3d Cir. 1999)(stating that the court "may take judicial notice of another court's opinion—not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity").

probable cause.   According to Clouser, Johnson's false statements resulted in a

warrant authorizing an illegal search in violation the Fourth Amendment.

In *Franks v. Delaware,* the Supreme Court held that a criminal defendant may

challenge the truthfulness of the factual statements made in an affidavit supporting a

search warrant, and it set forth a two-part test for evaluating such a challenge:

> [W]here the defendant makes a substantial preliminary
> showing that a false statement knowingly and intentionally, or
> with reckless disregard for the truth, was included by the affiant
> in the warrant affidavit, and if the allegedly false statement is
> necessary to the finding of probable cause, the Fourth
> Amendment requires that a hearing be held at the defendant's
> request.   In the event that at that hearing the allegation of
> perjury or reckless disregard is established by the defendant by a
> preponderance of the evidence, and, with the affidavit's false
> material set to one side, the affidavit's remaining content is
> insufficient to establish probable cause, the search warrant must
> be voided and the fruits of the search excluded to the same extent
> as if probable cause was lacking on the face of the affidavit.

438 U.S. 154, 155-56 (1978).   The analysis set forth in *Franks* also applies in the

civil-rights context, and "[a] section 1983 plaintiff who challenges the validity of a

search warrant by asserting that law enforcement agents submitted a false affidavit

to the issuing judicial officer must satisfy the two-part test developed by the

Supreme Court in *Franks* . . . ." *Sherwood v. Mulvihill*, 113 F.3d 396, 399 (3d Cir.

1997).   Under that test, "the plaintiff must prove, by a preponderance of the

evidence, (1) that the affiant knowingly and deliberately, or with a reckless disregard

for the truth, made false statements or omissions that create a falsehood in applying for a warrant; and (2) that such statements or omissions are material, or necessary, to the finding of probable cause." *Id.*

Whether an affiant makes a false statement knowingly and deliberately is a "straightforward question of fact." *Reedy v. Evanson*, 615 F.3d 197, 213 (3d Cir. 2010).   Whether an affiant makes a statement with reckless disregard for the truth is not always as straightforward; an affiant makes a statement with reckless disregard for the truth "when 'viewing all the evidence, the affiant must have entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported.'" *Wilson v. Russo*, 212 F.3d 781, 788 (3d Cir. 2000)(quoting *United States v. Clapp*, 46 F.3d 795, 801 n.6 (8th Cir. 1995)). "Assertions can be made with reckless disregard for the truth 'even if they involve minor details—recklessness is measured not by the relevance of the information, but the demonstration of willingness to affirmatively distort truth.'" *Reedy*, 615 F.3d at 213 (quoting *Wilson*, 212 F.3d at 788).

At the second step of the *Franks* analysis, the court must determine whether the false statement was "material, or necessary, to the finding of probable cause." *Wilson*, 212 F.3d at 789.   To do so, the court excises the false statement from the affidavit and then determines whether that "corrected" affidavit establishes probable

18

cause. *Id.*  "The probable-cause standard is incapable of precise definition or quantification into percentages because it deals with probabilities and depends on the totality of the circumstances." *Maryland v. Pringle*, 540 U.S. 366, 371 (2003). An officer has probable cause to conduct a search when the facts available would lead a reasonable person to believe that contraband or evidence of a crime is present. *Florida v. Harris,* 133 S.Ct. 1050, 1055 (2013).  An "officer may draw inferences based on his own experience in deciding whether probable cause exists." *Ornelas v. United States*, 517 U.S. 690, 700 (1996).  Although in a 42 U.S.C.§ 1983 case the existence of probable cause is generally a question of fact, the court may conclude as a matter of law that there was probable cause if the evidence, viewed in the light most favorable to the plaintiff, would not reasonably support a contrary factual finding. *Sherwood*, 113 F.3d at 401.

Clouser contends that defendant Johnson included two false statements in the affidavit of probable cause in support of the search warrant.  First, he contends that Johnson's statement in the affidavit about assisting in Clouser's arrest and conviction for manufacturing MDMA in 2003 was false because it was 2006, rather than 2003, when he pleaded guilty to delivery of MDMA.  Defendant Johnson admits that the statement that Clouser was convicted in 2003 for manufacturing MDMA was false.  To satisfy the first step of the *Franks* analysis, Clouser must

show that Johnson made the false statement either deliberately or with reckless disregard for the truth.   Here, Clouser suggests that Johnson included the statement with reckless disregard for the truth because he also included in the affidavit the docket number of the 2003 case, which, according to Clouser, shows that Johnson looked up the information before including it in the affidavit and, thus, Johnson knew that in 2003 Clouser was arrested for heroin, not MDMA.   Even assuming for the sake of argument that Clouser has shown that Johnson made the statement with reckless disregard for the truth, we conclude that the statement was not material.

Viewing the facts in the light most favorable to Clouser, we conclude that there was probable cause for the search warrant based on the affidavit of probable cause even if the entire statement about Johnson's participation in a prior arrest of Clouser for manufacturing MDMA is excised from the affidavit.   As set forth above, the affidavit of probable cause contains information from a confidential informant about: (1) Clouser making a batch of Fentanyl; (2) Clouser ordering chemicals for the manufacture of more Fentanyl; (3) Clouser showing the confidential informant the glassware he used to make Fentanyl; (4) Clouser using his email to communicate with companies in China to obtain chemicals; and (5) the delivery of chemicals to Clouser.   The affidavit further contains information about Johnson confirming the information provided by the confidential informant by: (1)

checking with UPS about the delivery of a package; (2) after learning that the package was shipped from Gordon Post Lab Supply, checking with Gordon Post Lab Supply to determine what Clouser had ordered; and (3) searching Clouser's email, which confirmed that Clouser ordered chemicals from China.   Moreover, the affidavit contains a chronology of Johnson's contacts with Jack Fasanello, a Senior Forensic Chemist with the DEA, who told Johnson that Clouser has ordered and obtained the component to make Fentanyl.   Excising the statement about Clouser's arrest in 2003 from the affidavit of probable cause and viewing the corrected affidavit in the light most favorable to Clouser, there is no question that corrected affidavit still supports a finding of probable cause.   Thus, the statement about Clouser's arrest in 2003 was not material to a finding of probable cause.

Clouser also claims that Johnson falsely stated in the affidavit that it had been confirmed that Clouser had ordered and received all the components to manufacture Fentanyl.   Although nowhere in the affidavit does Johnson state that Clouser ordered and received "all" the components to manufacture Fentanyl, he does make the following statements about Clouser's ordering and receipt of the components to make Fentanyl:   (1) "From the list of chemicals Fasanello determined that Clouser is attempting to make Fentanyl a schedule I substance"; (2) "Fasanello said that Molecular Sieve Absorbent and Pyridine are needed ingredients in the

manufacturing of Fentanyl"; and (3) "On March 14, 2011 I received confirmation from Fasanello that Clouser and Pickup have ordered on line and obtained the components to produce Fentanyl."   In his complaint, Clouser alleges that the evidence that he received during discovery in connection with his criminal case shows that he did not order or receive either the main precursors of Fentanyl or the ingredients to make them.   But in connection with this summary judgment motion, Clouser has not presented any evidence to call into question the truthfulness of the statements Johnson made in the affidavit about Clouser ordering and receiving the components to make Fentanyl.   And Clouser's assertion in his brief that Johnson is not insulated from liability by relaying false statements through another officer is unavailing because he has not shown, nor is there any basis to believe, that Johnson did so.   Further, Clouser's suggestion that Johnson has not attempted to show that Fasanello's statements were accurate misses the mark.   First, Clouser, as the plaintiff, has the burden of showing that the statements were false.   Second, there is absolutely no evidence that Fasanello's statements were false.   Third, even assuming that Fasanello's statements were false, Clouser has not presented any evidence that Johnson knew or reasonably should have known that the statements were false.

In sum, Clouser has not carried his burden of showing that Johnson knowingly and deliberately, or with reckless disregard for the truth, made a false statement that was material to a finding of probable cause.   Accordingly, Johnson is entitled to summary judgment on Clouser's Fourth Amendment claim regarding the search.   Further, because Clouser has not shown that Johnson knowingly and deliberately, or with reckless disregard for the truth, made a false statement that was material to the finding of probable cause, as well as the fact that the affidavit of probable cause was reviewed by a magistrate, Johnson is also entitled to summary judgment on Clouser's procedural due process claim relating to the search warrant application.

### B.   Sixth Amendment Claim.

According to Clouser, on March 29, 2011, defendants Johnson and Vogel violated his Sixth Amendment right to counsel by asking him to sign consent-to-search forms without his attorney present.

The Sixth Amendment, which applies to the States through the Fourteenth Amendment, provides, in pertinent part, that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defence." U.S. Const. amend. VI.   "The core of this right has historically been, and remains

today, 'the opportunity for a defendant to consult with an attorney and to have him investigate the case and prepare a defense for trial.'" *Kansas v. Ventris*, 556 U.S. 586, 590 (2009)(quoting *Michigan v. Harvey,* 494 U.S. 344, 348 (1990)).   But the right to counsel attaches before trial.   The Supreme Court "has held that the right to counsel guaranteed by the Sixth Amendment applies at the first appearance before a judicial officer at which a defendant is told of the formal accusation against him and restrictions are imposed on his liberty." *Rothgery v. Gillespie Cnty.* 554 U.S. 191, 194 (2008).   While the core of the right to counsel is a trial right, "once the adversary judicial process has been initiated, the Sixth Amendment guarantees a defendant the right to have counsel present at all 'critical' stages of the criminal proceedings." *Montejo v. Louisiana*, 556 U.S. 778, 786 (2009)(quoting *United States v. Wade,* 388 U.S. 218, 227–228 (1967)).   Holding that a post-indictment lineup is a critical stage, the Supreme Court stated that in determining what is a critical stage of the criminal proceedings the court is required to "scrutinize any pretrial confrontation of the accused to determine whether the presence of his counsel is necessary to preserve the defendant's basic right to a fair trial as affected by his right meaningfully to cross-examine the witnesses against him and to have effective assistance of counsel at the trial itself." *Wade*, 388 U.S. at 227.   Further, the court must "analyze whether potential substantial prejudice to defendant's rights

24

inheres in the particular confrontation and the ability of counsel to help avoid that prejudice." *Id.* "Critical stages include arraignments, postindictment interrogations, postindictment lineups, and the entry of a guilty plea." *Missouri v. Frye,* 132 S. Ct. 1399, 1405 (2012). "[T]he right covers pretrial interrogations to ensure that police manipulation does not render counsel entirely impotent—depriving the defendant of 'effective representation by counsel at the only stage when legal aid and advice would help him.'" *Ventris,* 556 U.S. at 591 (quoting *Massiah v. United States,* 377 U.S.201, 204 (1964)(quoting *Spano v. New York,* 360 U.S. 315, 326 (1959)(Douglas, J., concurring)).

The defendants contend that they did not violate Clouser's right to counsel because a request for consent to search is not a critical stage of the criminal proceedings. Although they acknowledge that the Third Circuit has not addressed this issue, they assert that other Courts of Appeal have universally so determined, and they cite numerous cases. Clouser responds that the cases cited by the defendants are inapposite because they involved requests for consent to search at the time of, or shortly after, arrest. He asserts that his case is different because the defendants waited until two weeks after his arrest to request consent to search the packages and by this time he had already secured counsel and had requested that his counsel be present. He also asserts that counsel could have offered invaluable

assistance to him about whether he should consent to the search by advising him whether the officers had probable cause to obtain a search warrant.

Some of the cases cited by the defendants are inapposite: the request for counsel in those cases was made before the defendant was indicted or arraigned and, thus, before the Sixth Amendment right to counsel attached.   But other cases cited by the defendants are on point: they involved requests for consent to search after a defendant was indicted and they hold that such requests for consent to search are not a critical stage of the criminal proceedings. *See United States v. Cooney,* 26 F. App'x 513 (6th Cir. 2002); *United States v. Hidalgo*, 7 F.3d 1566 (11th Cir. 1993); *United States v. Kon Yu-Leung,* 910 F.2d 33 (2nd Cir. 1990).

In *Kon Yu-Leung*, the Second Circuit analogized a post-indictment request for consent to search to other post-indictment situations determined not be critical stages for Sixth Amendment purposes and distinguished it from other situations held to be critical stages:

> The sixth amendment protects a defendant's right to a fair trial.   Accordingly, "the 'trial' guarantees that have been applied to the 'pretrial' stage of the criminal process are similarly designed to protect the fairness of the trial itself." *Schneckloth,* 412 U.S. at 238-39, 93 S.Ct. at 2053-54; *see also United States v. Gouveia,* 467 U.S. 180, 189, 104 S.Ct. 2292, 2298, 81 L.Ed.2d 146 (1984).   It is therefore important to evaluate "whether confrontation with counsel at trial can serve as a substitute for counsel at the pretrial confrontation." *Ash,* 413

26

U.S. at 316, 93 S.Ct. at 2577.   Thus, the taking of fingerprints, or of samples of blood, hair or clothing, is not deemed a critical stage because "the accused has the opportunity for a meaningful confrontation of the Government's case at trial through the ordinary processes of cross-examination of the Government's expert witnesses and the presentation of the evidence of his own experts." *Wade,* 388 U.S. at 227-28, 87 S.Ct. at 1932-33; *see also Ash,* 413 U.S. at 316, 93 S.Ct. at 2577.

These considerations weigh against a conclusion that a "critical stage" of the criminal proceeding against Ruotolo occurred at the time of his consent to the search of his home. No confrontation occurred, as in the case of a lineup, which would result in adverse consequences difficult to remedy at trial. No evidence was generated, as in the case of incriminating testimony, that was not already in existence and virtually certain to be available to the government in due course.   In this connection, there is no contention that the government would not ultimately have obtained a warrant to search Ruotolo's home if his consent had not been forthcoming.   In sum, it is difficult to ascertain what benefit would have accrued to Ruotolo, or what detriment he might have avoided, if counsel had been available to him at that juncture.   We conclude that, at least on the facts presented in this case, Ruotolo's consent to the search of his residence was not a critical stage of the criminal proceeding against him.

910 F.2d at 39-40.

The Eleventh Circuit in *Hidalgo* also held that a request by law enforcement for consent to search is not a critical stage of the proceedings. 7 F.3d at 1570.   Like the Second Circuit in *Kon Yu-Leung,* it distinguished a request for consent to search from other stages of the criminal proceedings that had been held to be critical stages: "The request for a consent to search is not a trial-like confrontation where the

absence of counsel poses a threat of substantial prejudice to the accused like that posed by the absence of counsel at a pretrial lineup, or a pretrial interrogation." *Id.* And it concluded that a request for a consent to search was more like other situations not held to be critical stages such as requests "for other types of physical evidence, such as handwriting exemplars, blood samples, and the like, or . . . a photographic display." *Id.*; *see also Cooney,* 26 F. App'x at 523-24 (holding that a consent to search is not a critical stage of the proceedings and relying on the reasoning of *Kon Yu-Leung* and *Hidalgo*).

The defendants contend that they did not violate Clouser's Sixth Amendment right to counsel because a request for consent to search is not a critical stage of the criminal proceedings during which a criminal defendant has the right to the presence of counsel.   They also contend that even if their actions violated Clouser's rights, they are entitled to qualified immunity.   Because it is not clearly established in our Circuit that a request for consent to search is a critical stage of the criminal proceedings, we conclude the defendants are entitled to qualified immunity from Clouser's Sixth Amendment claim.

Despite their participation in constitutionally impermissible conduct, government officials "may nevertheless be shielded from liability for civil damages if their actions did not violate 'clearly established statutory or constitutional rights of

which a reasonable person would have known.'" *Hope v. Pelzer,* 536 U.S. 730, 739 (2002)(quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).   Qualified immunity operates to ensure that, before they are subjected to suit, officers are on notice that their conduct is unlawful. *Id.*   "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan,* 555 U.S. 223, 231 (2009).   "If the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct." *Harlow,* 457 U.S. at 818-19.

The qualified immunity analysis has two prongs. *Pearson,* 555 U.S. at 232. One prong of the analysis is whether the facts that the plaintiff has alleged or shown make out a violation of a constitutional right. *Id.*   The other prong of the analysis is whether the right was clearly established. *Saucier v. Katz,* 533 U.S. 194, 201 (2001). The court is permitted to exercise its discretion in deciding which of the two prongs of the qualified-immunity analysis should be addressed first in light of the circumstances of the particular case. *Pearson,* 555 U.S. at 236.   So it may forego difficult constitutional issues and award qualified immunity to a defendant if it is

apparent that the defendant did not violate rights that were clearly established at the time the defendant acted. *Id.*

Here, the defendants are entitled to qualified immunity from an award of damages on Clouser' Sixth Amendment claim because it was not clearly established that a request for consent to search is a critical stage of the criminal proceedings. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier,* 533 U.S. at 202.   "This is an objective inquiry, to be decided by the court as a matter of law." *Doe v. Groody*, 361 F.3d 232, 238 (3d Cir. 2004).   Because this inquiry focuses on the official's actual situation, the analysis "must be undertaken in light of the specific context of the case, not as a broad general proposition. . . ." *Montanez v. Thompson*, 603 F.3d 243, 251 (3d Cir. 2010) (quoting *Saucier,* 533 U.S. at 201).   "This inquiry turns on the 'objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken.'" *Pearson,* 555 U.S. at 244 (quoting *Wilson v. Layne,* 526 U.S. 603, 614 (1999)).   "'If the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate.'" *Bayer v. Monroe County Children & Youth Services*, 577 F.3d 186, 193 (3d Cir. 2009)(quoting *Saucier,* 533 U.S. at 202).   "In

30

other words, 'existing precedent must have placed the statutory or constitutional question beyond debate.'" *Reichle v. Howards,* 132 S.Ct. 2088, 2093 (2012)(quoting *Ashcroft v. al-Kidd,* 131 S.Ct. 2074, 2083 (2011)).

At the time of the request in this case, it was not clearly established that a request for consent to search is a critical stage of the criminal proceedings to which the Sixth Amendment right to counsel applies.   Although the Second Circuit in *Kon Yu-Leung*, the Eleventh Circuit in *Hidalgo*, and the Sixth Circuit in *Cooney* have held that a post-indictment request for consent to search is not a critical stage of the criminal proceedings for Sixth Amendment purposes, the parties have cited no Supreme Court or Third Circuit cases so holding, and the Court has found none. Because the law was not clearly established, the defendants are entitled to qualified immunity with respect to Clouser's Sixth Amendment claim.

## C.   The Packages.

According to Clouser, after his arrest, two packages—one sent through the United States mail and one sent through UPS—were seized without a warrant and without probable cause.   Clouser claims that the seizure of these two packages violated the Fourth Amendment.   He also contends that defendant Johnson altered the chain-of-custody documents for these packages and thereby violated the

Fourteenth Amendment by subverting safeguards meant to protect against illegal search and seizure.

"The Fourth Amendment 'indicates with some precision the places and things encompassed by its protections': persons, houses, papers, and effects." *Florida v. Jardines*, 133 S. Ct. 1409, 1414 (2013)(quoting *Oliver v. United States,* 466 U.S. 170, 176 (1984)).   Personal property is included within the term "effects" in the Fourth Amendment. *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 209 (3d Cir. 2001). "A 'seizure' of property . . . occurs when 'there is some meaningful interference with an individual's possessory interests in that property.'" *Soldal v. Cook Cnty.*, 506 U.S. 56, 61 (1992) (quoting *United States v. Jacobsen*, 466 U.S. 109, 113 (1984)).   Further, under the Fourteenth Amendment, a state actor may not "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1.   Procedural due process protects possessory interests in property. *Abbott v. Latshaw,* 164 F.3d 141, 146 (3d Cir. 1998).

### 1.   Personal Involvement.

Defendant Johnson contends that he is entitled to summary judgment on Clouser's Fourth Amendment and Fourteenth Amendment due process claims

regarding the seizure of the packages because he was not personally involved in the initial seizure of the packages.

Liability under Section 1983 is personal in nature, and to be liable, a defendant must have been personally involved in the wrongful conduct.   In other words, "state actors are liable only for their own unconstitutional conduct." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014).   And so respondeat superior cannot form the basis of liability. *Evancho v. Fisher,* 423 F.3d 347, 353 (3d Cir. 2005).   "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).   Thus, to establish a § 1983 claim, a plaintiff must show that a defendant participated in a violation of the plaintiff's rights, directed others to violate those rights, or otherwise had knowledge of and acquiesced in violations committed by subordinates. *Baker v. Monroe Twp.,* 50 F.3d 1186, 1190–91 (3d Cir. 1995).

As to the seizure of the package that was sent through the United States mail, Johnson asserts: (1) that on March 7, 2011, it was the PSP, not he, who requested that Inspector Corrado check for names receiving mail at both of Clouser's addresses; (2) that pursuant to that request, Inspector Corrado advised the Millersburg Postmaster to seize the package addressed to Clouser and send it to him;

and (3) that when Corrado received the package, he contacted Johnson and gave it to him.   Thus, Johnson contends that he did not seize the package; rather, he merely received it from Inspector Corrado, who seized it at the behest of the PSP.   And so, according to Johnson, he was not personally involved in the seizure and cannot be found to have violated Clouser's Fourth or Fourteenth Amendment rights.   As to the package sent through UPS, Johnson asserts that Clouser cannot demonstrate that he was personally involved in the seizure of that package and that the evidentiary record is devoid of any evidence regarding how that package came to be in the Dauphin County evidence locker.

Citing his own deposition testimony, Clouser counters that Johnson had possession of the packages in his office when Johnson brought him into the office to sign the consent-to-search forms.   According to Clouser, this shows that Johnson, at least, acquiesced in the seizure of the packages.   Accepting Clouser's testimony as true and drawing all reasonable inferences in the light most favorable to Clouser as the nonmoving party, we cannot say as a matter of law that Johnson was not personally involved in the seizure of the packages.[4]   Accordingly, we recommend

---

[4] Johnson did not file a reply brief, and so he has not specifically responded to Clouser's assertion that the packages were in Johnson's office at the time Clouser was brought to the office and that shows Johnson's personal involvement.   Johnson

34

that Johnson not be granted summary judgment as to Clouser's claims regarding the

seizure of the packages on the basis of lack of personal involvement.[5]   And because

with regard to the Fourth Amendment claim Johnson only argues lack of personal

involvement, Johnson is not entitled to summary judgment on the Fourth

Amendment claim regarding the seizure of the packages.[6]

---

also does not brief the issue of whether the seizure of packages had ended by that
time.   For a discussion of the "continuing seizure doctrine" with respect to personal
property see Natalie Logan, *Questions of Time, Place, and Mo(o)re: Personal
Property Rights and Continued Seizure Under the DNA Act*, 92 B.U. L. Rev. 733
(2012), and Graham Miller, *Right of Return: Lee v. City of Chicago and Continuing
Seizure in the Property Context*, 55 DePaul L. Rev. 745 (2006).

[5] Because Johnson does not argue that there was probable cause to seize the
packages or that Clouser did not have a possessory interest in the packages, we do
not address those issues.   Further, although Johnson argues in a conclusory manner
that he is entitled to qualified immunity with respect to all of Clouser's claims, he
does not set forth the basis for that argument with respect to the seizure of the
packages, and the basis for such an argument is not readily apparent.

[6] We do not construe Clouser's complaint to raise separate Fourth Amendment
search claims regarding the packages.   But in any event, the undisputed facts show
that Clouser consented to the search of the package sent through the United States
mail and that the package sent though UPS has not been searched.

## 2.   Procedural Due Process.

Johnson also contends that he is entitled to summary judgment as to Clouser's procedural due process claim regarding the seizure of the packages because Clouser had an adequate post-deprivation remedy for the return of his property.

The Fourteenth Amendment provides that a state shall not "deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend XIV, §1.   A due process claim requires a two-part analysis.   First, the court must determine whether the interest asserted by the plaintiff is within the scope of protection of life, liberty, or property found in the Due Process Clause. *Shoats v. Horn*, 213 F.3d 140, 143 (3d Cir. 2000).   Second, if the interest is one that is protected by the Due Process Clause, "the question then becomes what process is due to protect it." *Id.*

"To determine what process is due in a particular situation, courts consider three factors: first, the private interest at stake; second, the risk of erroneous deprivation of that interest through the procedures used and the probable value of different procedures; and third, the government' interest." *Mulholland v. Gov't County of Berks,* 706 F.3d 227, 238 (3d Cir. 2013).   "The core of due process is the right to notice and a meaningful opportunity to be heard." *LaChance v. Erickson,* 522 U.S. 262, 266 (1998).

"While due process usually requires some type of pre-deprivation hearing, a post-deprivation hearing may also satisfy the requirement." *McKenna v. Portman*, 538 F. App'x 221, 224 (3d Cir. 2013).   "A due process violation 'is not complete when the deprivation occurs; it is not complete unless and until the State fails to provide due process.'" *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000) (quoting *Zinernon v. Burch,* 494 U.S. 113, 126 (1990)).   "If there is a process on the books that appears to provide due process, the plaintiff cannot skip that process and use the federal courts as a means to get back what he wants." *Id.*   "Further, absent the right to control the process, a defendant cannot be held liable, as a matter of law, for a deprivation of said right." *Sharpe v. County of Dauphin*, 4:09-CV-989, 2010 WL 3529283 (M.D. Pa. Sept. 7, 2010).

Johnson does not argue that Clouser did not have a property interest in the packages.   He instead contends that Clouser's procedural due process claim fails because Pennsylvania Rule of Criminal Procedure 588 provides a process for Clouser to redress the seizure of the packages.   Specifically, Pa.R.Crim.P. 588 provides a procedure for the return of property seized during a criminal investigation, and courts "have consistently held" that the Rule "provides an adequate post-deprivation remedy." *Guarrasi v. Cnty. of Bucks*, No. CIV.A. 10-1879, 2011 WL 1226118, at *9 (E.D. Pa. Mar. 29, 2011); *see also McKenna*, 538

37

F. App'x at 225 ("Pennsylvania Rule of Criminal Procedure 588 provides an adequate post-deprivation remedy when police seize property pursuant to an investigation.").   Courts have also recognized that a state-law conversion or replevin case provides an adequate post-deprivation remedy in situations of seized property. *Stasko v. Lebanon Cnty. Drug Task Force*, No. 1:12-CV-1156, 2012 WL 6561726, at *9-10 (M.D. Pa. Dec. 17, 2012)("In short, if Plaintiff believes his vehicle is being improperly withheld pursuant to a seizure in connection with criminal proceedings, a motion for return of property pursuant to Rule 588 is adequate to cause the property to be returned.   Insofar as Plaintiff claims that Defendants' retention of his property is a "random and unauthorized act" separate and apart from the criminal investigation, Plaintiff is capable of filing a state law tort action in state court seeking the return of his property."); *Olarte v. Cywinski*, No. 3:12-CV-632, 2012 WL 3757649, at *6 (M.D. Pa. Aug. 28, 2012)("We agree with defendant that Pennsylvania law provided plaintiff with adequate post-deprivation remedies.   Courts have found that Pennsylvania law provides for such adequate remedies through replevin and conversion claims.").

Given the availability of an adequate post-deprivation remedy in the form of either a Rule 588 motion[7] or a replevin/conversion claim, Clouser's Fourteenth Amendment procedural due process claim fails.

## VI.   Recommendation.

Accordingly, for the foregoing reasons, **IT IS RECOMMENDED** that the defendants' second motion (doc. 127) for summary judgment be granted in part and denied in part.   It is recommended that the defendants be granted summary judgment as to all remaining claims except the Fourth Amendment seizure claim against defendant Johnson with regard to the two packages.

---

[7] In an unsigned declaration, Clouser states that in May of 2014, he filed a motion for the return of property with the Dauphin County Clerk of Courts, and a short time later, he received a response that the court would not hear the motion because the case was not resolved in that court. *See Doc. 135* at 6.   We will not consider this declaration since it is unsigned.   Moreover, the motion for return of property, also unsigned, that Clouser submitted with his declaration seeks the return of electronic items (cell phones, computers, and related devices) seized during the March 15, 2011 search of his residence. *See Doc. 135* at 5.   The motion does not mention the two packages at issue here.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof.   Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.   The briefing requirements set forth in Local Rule 72.2 shall apply.   A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.   The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record.   The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 21 st day of May, 2015.

*S/Susan E. Schwab*
Susan E. Schwab
United States Magistrate Judge